UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TONY D. PENWELL, | ) |
| Plaintiff, | ) CASE NO.   C05-2106-TSZ-MJB |
| v. | ) |
| REED HOLTGEERTS, *et al.*, | ) REPORT & RECOMMENDATION |
| Defendants. | ) |

## INTRODUCTION & SUMMARY CONCLUSION

Plaintiff is incarcerated in the Regional Justice Center ("RJC") in Kent, Washington. He has filed a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983, alleging that he has been improperly housed in the "Administrative Segregation" wing of the RJC since his arrest in November 2004. Defendants have filed a motion for summary judgment, to which plaintiff has filed a response. Having reviewed the parties' submissions, the Court recommends that defendants' motion for summary judgment be granted and this action be dismissed.

## FACTUAL BACKGROUND

The following facts are undisputed:

Plaintiff was booked into the RJC on November 3, 2004, as a pretrial detainee awaiting trial on charges of assault in the first degree, rape in the second degree, unlawful imprisonment, felony harassment, and tampering with a witness. (Dkt. #82 at 1). On February 17, 2006, plaintiff was convicted by a jury of these charges. (Dkt. #81, Attachment #1). Plaintiff remains in the custody of

REPORT & RECOMMENDATION
PAGE - 1

1  the RJC while he awaits the conclusion of a second trial for child molestation. (*Id*., Attachment #2).

2  For the bulk of his time at the RJC, plaintiff has been housed in the "Administrative
3  Segregation" unit ("Ad-Seg"). (Dkt. #82 at 2). This unit houses inmates who for various reasons
4  must be separated from the general population: they present disciplinary problems, or need to be
5  protected from other inmates, or, as in plaintiff's case, they are under a court order that restricts their
6  use of the telephone and mail.[1] (*Id*.). On November 23, 2004, a state court judge ordered that
7  plaintiff be barred from making any telephone calls except to his defense counsel, and from sending
8  out any mail. (Dkt. #82 at Exhibit B). The reason for this order is not disclosed by the record. This
9  blanket prohibition was revisited by the state court on December 14, 2004 and reaffirmed. (*Id*.). In
10 addition, the state court in July 2005 and February 2006, entered "no-contact" orders barring plaintiff
11 from contacting the victims of his crimes. (*Id*.).

12 As a consequence of being housed in the Ad-Seg unit, plaintiff's living conditions have been
13 more restrictive than if he were placed with the RJC's general population. (Dkt. #81 at 11). Because
14 he is incarcerated in Ad-Seg, plaintiff is limited to one hour outside his cell every day, he is denied
15 group worship services, and any time he leaves the unit, he must wear restraints while being
16 transported. (*Id*. at 14).

17                    PROCEDURAL HISTORY

18 On December 20, 2005, plaintiff submitted a proposed civil rights complaint, along with an
19 application for leave to proceed *in forma pauperis* ("IFP"). (Dkt.#1). The Court denied plaintiff's
20 application to proceed IFP because plaintiff had sufficient funds in his inmate trust account to pay the
21 filing fee. (Dkt. #5). On March 22, 2006, plaintiff paid the filing fee and the Court issued an Order
22 directing the Clerk to serve the complaint on defendants. (Dkt. #12). Plaintiff subsequently was
23 granted permission to file an amended complaint on May 10, 2006. (Dkt. #26).

---

[1] Defendants state, and plaintiff does not dispute, that the Ad-Seg unit is the only place where they can assure that an inmate will be unable to circumvent telephone restrictions. (Dkt. #82 at 2-3). Therefore, it is undisputed that in order to effectuate the state court's orders, plaintiff was required to be placed in Ad-Seg.

REPORT & RECOMMENDATION
PAGE - 2

1  Defendants filed their answer on July 6, 2006. (Dkt. #39). On August 18, 2006, the Court
2  issued an Order setting deadlines for discovery and dispositive motions. (Dkt. #43). The original
3  deadline for discovery was October 23, 2006. (*Id*.). Due to discovery disputes and extensions of
4  time, this period was extended to April 23, 2007. (Dkt. #60).

5  On April 24, 2007, defendants filed the instant motion for summary judgment. (Dkt. #81). On
6  May 8, 2007, plaintiff submitted his response, along with a motion to file an overlength response.
7  (Dkt. #92). The Court granted the motion to file an overlength response and the motion for summary
8  judgment is now ready for review.

9  ## DISCUSSION

10  Summary judgment is proper only where "the pleadings, depositions, answers to
11  interrogatories, and admissions on file, together with the affidavits, if any, show that there is no
12  genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of
13  law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The court
14  must draw all reasonable inferences in favor of the non-moving party. *See F.D.I.C. v. O'Melveny &*
15  *Meyers*, 969 F.2d 744, 747 (9th Cir. 1992), *rev'd on other grounds,* 512 U.S. 79 (1994).

16  The moving party has the burden of demonstrating the absence of a genuine issue of material
17  fact for trial. *See Anderson*, 477 U.S. at 257. "When the moving party has carried its burden under
18  Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to
19  the material facts. . . .Where the record taken as a whole could not lead a rational trier of fact to find
20  for the nonmoving party, there is no genuine issue for trial." *Scott v. Harris*, __U.S.__, 127 S. Ct.
21  1769, 1776 (2007) (internal citation and quotation omitted). Conclusory allegations in legal
22  memoranda are not evidence, and cannot by themselves create a genuine issue of material fact where
23  none would otherwise exist. *See Project Release v. Prevost,* 722 F.2d 960, 969 (2nd Cir. 1983).

24  In order to sustain a cause of action under 42 U.S.C. §1983, plaintiff must show (i) that he
25  suffered a violation of rights protected by the Constitution or created by federal statute, and (ii) that
26  the violation was proximately caused by a person acting under color of state law. *See Crumpton v.*

REPORT & RECOMMENDATION
PAGE - 3

1   *Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).  To satisfy the second prong, plaintiff must allege facts
2   showing how individually named defendants caused or personally participated in causing the harm
3   alleged in the Complaint.  *See Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981).

4       Defendants argue that their motion for summary judgment should be granted on several
5   grounds, including qualified immunity.  However, the court need address only their argument that
6   plaintiff has failed to meet his burden of showing a genuine issue of material fact.  Because the court
7   agrees with this argument, it is unnecessary to address defendants' alternative grounds for summary
8   judgment.

9       Although his complaint is not entirely clear, it appears that plaintiff's chief contention is that
10  his placement in Ad-Seg violates his constitutional rights because for the bulk of his time there, he was
11  a pretrial detainee, not convicted of any crime, and the conditions were so restrictive as to constitute
12  punishment.[2]  (Dkt. #26 at 3 and Attachment).  *See Bell v. Wolfish*, 441 U.S. 520 (1979).  Under *Bell*,
13  an individual, such as plaintiff, who is accused but not convicted of a crime, cannot be subjected to
14  conditions while detained that amount to "punishment."  441 U.S. at 536-37.  Restrictions amount to
15  punishment when the restrictions are either expressly intended to punish or where they "serve an
16  alternative, non-punitive purpose but are nonetheless excessive in relation to the alternative purpose."
17  *See Demery v. Arpaio*, 37 F. 3d 1020, 1028 (9th Cir. 2004).  A restriction that is reasonably related to
18  a legitimate government goal, such as effective management of the jail or maintenance of internal jail
19  security and order, will not, without more, constitute punishment.  *See Bell*, 441 U.S. at 440.
20  "Conversely, if a restriction or condition is not reasonably related to a legitimate goal – if it is arbitrary
21  or purposeless – a court permissibly may infer that the purpose of the governmental action is
22  punishment . . . ."  *Id.* at 539; *White v. Roper*, 901 F.2d 1501, 1504 (9th Cir. 1990).

23      In particular, plaintiff complains (1) of his isolation and limited time outside his cell, which he

---

25      [2] Plaintiff does not challenge the state court's repeated orders that his telephone and mail
26  access be restricted.  Rather, he challenges only the consequence of these orders, which resulted in his placement in Ad-Seg.

REPORT & RECOMMENDATION
PAGE - 4

1  claims has led to physical and psychological deterioration; (2) his lack of opportunity to practice his

2  religion in group meetings, which he contends has impermissibly infringed upon the exercise of his

3  religion; and (3) the requirement that he wear restraints while being transported outside the unit.[3]

4  (*Id*.). The Court will address each claim in turn.

5          <u>Isolation and Limited Time Outside Cell</u>

6          It is undisputed that due to his placement in Ad-Seg, plaintiff is restricted to one hour outside

7  his cell per day. (Dkt. #81 at 14). Defendants concede that this policy is restrictive, but maintain that

8  it is not imposed for punitive purposes. Rather, defendants assert that the policy exists to insure

9  "institutional security and internal discipline" among the inmates housed in Ad-Seg. (*Id*.).

10          In analyzing this issue, the Court is mindful of its limited role in assessing the constitutional

11  parameters of pretrial detention. Here, the sole question is whether the isolation that plaintiff has been

12  forced to endure due to his placement in Ad-Seg is reasonably related to a legitimate governmental

13  goal, such as effective management of the jail or maintenance of internal jail security. 441 U.S. at 539-

14  40. In addition, corrections officials "must be given wide-ranging deference in the adoption and

15  execution of policies and practices that in their judgment are needed to preserve internal order and

16  discipline and to maintain institutional security." (*Id.* at 547).

17          The limited focus of the Court's inquiry, coupled with the deference owed to corrections

18  officials, lead to the conclusion that plaintiff has not met his burden of establishing a genuine issue of

19  material fact regarding his isolation while in Ad-Seg. While the isolation itself does not appear related

20  to the telephone restrictions that caused plaintiff to be placed in Ad-Seg, the confinement of inmates in

21  isolation is reasonably related to the RJC's goal of preserving the institutional security and internal

22  discipline among the inmates housed in Ad-Seg. The Court notes that the one-hour per day rule might

23  not be the least restrictive means of meeting those penological goals, but defendants are not under an

---

[3] Plaintiff also attempts to raise, via his response to defendants' motion for summary judgment, a claim that RJC officials have been deliberately indifferent to his medical needs. (Dkt. #92 at 2). However, this claim was not part of plaintiff's amended complaint and may not be added at this point to this action.

REPORT & RECOMMENDATION
PAGE - 5

1  obligation to narrowly tailor their policies to meet such an exacting standard.  As the Supreme Court

2  stated in *Bell*: "Courts must be mindful that these inquiries spring from constitutional requirements

3  and that judicial answers to them must reflect that fact rather than a court's idea of how best to

4  operate a detention facility." 441 U.S. at 539.  Therefore, defendants are entitled to summary

5  judgment on this claim.

6  <u>Lack of Group Meetings for Religious Service</u>

7  Plaintiff next claims that while housed in Ad-Seg, he has been denied "all church and prayer

8  meetings, or any private meetings with the Chaplain or any other religious clergy." (Dkt. #26,

9  Attachment at ¶ 29).  Plaintiff contends that the only meetings he had with the Chaplain were through

10 the peep hole in his door, which did not afford him any privacy. (*Id*. at ¶ 30).  This limitation, plaintiff

11 asserts, violated his First Amendment right to exercise his religion. (*Id*.).

12 Defendants maintain that plaintiff's First Amendment claim fails under both the *Bell v. Wolfish*

13 pretrial detainee analysis discussed above and also under the more specific framework for addressing

14 religious freedom claims in the prison context. (Dkt. #81 at 15-16).  The Court agrees.  Under *Bell*,

15 the restriction on plaintiff's practice of his religion, *i.e.*, the curtailment of group worship meetings, is

16 reasonably related to the RJC's goal of preserving security and discipline among the inmates housed in

17 Ad-Seg.  Under Ninth Circuit precedent governing freedom of religion claims, "[i]n order to reach the

18 level of a constitutional violation, the interference with one's practice of religion must be more than an

19 inconvenience; the burden must be substantial and an interference with a tenet of belief that is central

20 to religious doctrine." *Freeman v. Arpaio*, 125 F.3d 732, 737 (9th Cir. 1997) (internal quotes

21 omitted).

22 Here, plaintiff's contention that his First Amendment rights were violated by the RJC's failure

23 to provide him with the opportunity to attend group worship meetings is without merit.  Plaintiff offers

24 no evidence that his religion, Catholicism, requires that its adherents meet in groups.  Accordingly,

25 defendants are entitled to summary judgment on plaintiff's First Amendment claim.

26 <u>Use of Restraints While Being Transported</u>

REPORT & RECOMMENDATION
PAGE - 6

1   Plaintiff's final claim is that his right as a pretrial detainee to be free from punishment was
2   violated by the RJC's practice of making inmates wear restraints while being transported outside of the
3   Ad-Seg unit. It appears that these restraints are hand cuffs that attach to the waist. (Dkt. #82, Ex. E).
4   Plaintiff alleges that he once was forced to wear restraints for two hours while waiting to see a doctor
5   at the Clinic. (Dkt. #22 at 3).

6   In response, defendants maintain that the blanket policy of using restraints while transporting
7   residents of Ad-Seg is reasonably related to the RJC's goal of preserving security and discipline.
8   Plaintiff attaches an exhibit to his response that supports defendants' contention: In a memorandum
9   dated January 29, 2004, RJC officials announced the policy in response to an incident involving an
10  inmate from Ad-Seg who had refused to be hand-cuffed when being transported from the Clinic back
11  to the unit. (Plaintiff's response, Ex. #8). It appears that to eliminate this risk in the future, RJC
12  officials decided simply to use waist restraints whenever an inmate is transported away from Ad-Seg.

13  As with plaintiff's other claims, the Court finds that under the limited, deferential scope of
14  review mandated by *Bell* and its progeny, defendants' reliance on "institutional security and internal
15  discipline" (Dkt. #81 at 14) as the goals served by the restraint policy is sufficient to defeat plaintiff's
16  claim. These goals are reasonably related to the restraint policy and therefore, this aspect of plaintiff's
17  pretrial confinement is not punitive. As the Supreme Court stated in *Bell*, "[measures] that are
18  reasonably related to the institution's interest in maintaining jail security do not, without more,
19  constitute unconstitutional punishment, even if they are discomforting. . . . " 441 U.S. at 540.
20  Accordingly, defendants are entitled to summary judgment on this claim.

21  <u>Plaintiff's Status after Conviction</u>

22  Finally, the Court addresses whether the above conclusions change when plaintiff's claims are
23  reviewed under the standard applicable *after* he was convicted and sentenced, as opposed to the *Bell*
24  *v. Wolfish* standard that governs his status as a pretrial detainee. Plaintiff was sentenced on February
25  17, 2006 (Dkt. #81, Attachment #1), and filed his amended complaint in federal court on May 10,
26  2006. Accordingly, his amended complaint could be interpreted as encompassing claims as a

REPORT & RECOMMENDATION
PAGE - 7

convicted inmate as well as a pretrial detainee. Once he was convicted, plaintiff's claims became subject to the Eight Amendment's prohibition against cruel and unusual punishment. *See Resnick v. Hayes*, 213 F.3d 443, 448 (9th Cir. 2000) (holding that claim by a convicted prisoner awaiting sentencing is governed by the Eighth Amendment).

However, as the Supreme Court has stated in describing the contours of the Eight Amendment, "*extreme* deprivations are required to make out a conditions-of-confinement claim." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "Because routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *(Id.)*. Plaintiff's claims do not meet this high standard. While undeniably unpleasant, the conditions he complains of are not "extreme deprivations" that give rise to a constitutional violation. Accordingly, the conclusions above do not change under an Eighth Amendment analysis.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment should be granted and plaintiff's complaint and this action should be dismissed. A proposed Order accompanies this Report and Recommendation.

DATED this 14th day of June, 2007.

Monica J. Benton
U.S. Magistrate Judge