UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TONY D. PENWELL,

    Plaintiff,

v.

REED HOLTGEERTZ, *et al.*,

    Defendants.

CASE NO. C05-2106-TSZ-MAT

REPORT AND RECOMMENDATION

## SUMMARY AND INTRODUCTION

In 2007, the Court granted summary judgment in favor of defendants on all of plaintiff Tony D. Penwell's 42 U.S.C. § 1983 claims. (Dkt. 101.) In 2010, the United States Court of Appeals for the Ninth Circuit affirmed that summary-judgment order on all grounds except for one. *See Penwell v. Holtgeertz*, No. 07-35638 (9th Cir. July 7, 2010), *located at* (Dkt. 114). The Ninth Circuit vacated summary judgment on Mr. Penwell's free-exercise claim, and remanded so that the Court could consider the question in light of a legal standard enunciated during the pendency of the appeal.

Having considered supplemental briefing and the entire record, the Court finds that the factual record has been insufficiently developed regarding whether the restrictions on Mr.

REPORT AND RECOMMENDATION
PAGE -1

Penwell's ability to attend group worship services and to consult privately with a chaplain (1) violated the First Amendment's Free Exercise Clause, and (2) violated the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc–1. So the parties may further develop the record and bring renewed dispositive motions, the Court recommends as follows: DENYING defendants' renewed motion for summary judgment (Dkts. 81, 129); CONSTRUING plaintiff's opposition briefs in 2007 (Dkt. 96, at 13) and 2011 (Dkt. 127, at 3–5) to be motions to amend the complaint to add a RLUIPA claim and GRANTING the motions to amend; and GRANTING plaintiff leave to file (a) an updated application to proceed *in forma pauperis* ("IFP") and (b) a renewed motion for appointment of counsel.[1]

**BACKGROUND**

On November 3, 2004, Mr. Penwell was booked into King County's Regional Justice Center ("RJC") in Kent, Washington, as a pretrial detainee awaiting trial on charges of first-degree assault, second-degree rape, unlawful imprisonment, felony harassment, and tampering with a witness. (Dkt. 81-1, at 2; Dkt. 130, at 2); *see State v. Penwell*, No. 04-1-13613-6 KNT (information filed Nov. 8, 2004) (hereinafter "First Criminal Matter"). He was convicted by jury of those charges in January 2006. (Dkt. 81-1, at 2.) While a pretrial detainee, he was also charged with and, in June 2007, convicted by guilty plea of two counts of child molestation. (Dkt. 81-3, at 3–6; Dkt. 133, at 2); *see State v. Penwell*, No. 05-1-09289-7 KNT (information filed July 7, 2005) (hereinafter "Second Criminal Matter").

---

[1] Plaintiff should file his updated IFP application and renewed motion for appointment of counsel **within thirty (30) days** of the date of the order adopting this Report and Recommendation.

On November 23, 2004, during the pendency of the First Criminal Matter, King County Superior Court Judge Michael Trickey ordered that Mr. Penwell be "prohibited from making any calls from the King County Jail Jail-R.J.C., except to defense counsel at SCRAP." (Dkt. 133, at 5.)[2] In December 2004, Judge Trickey twice denied Mr. Penwell's motions for reconsideration. (Dkt. 133, at 7–8.)

Based on the court's phone-block order, on November 23, 2004, the King County Department of Adult and Juvenile Detention ("DAJD") assigned Mr. Penwell to Administrative Segregation ("Ad Seg"). (Dkt. 130, at 2.) According to the DAJD, the jail facilities are equipped to prevent inmates from calling a specific telephone number by blocking such numbers one-by-one. (*Id.*) The DAJD cannot, however, prevent an inmate from calling a specific *person* if, for example, that person can also be reached at an unblocked number, or someone at an unblocked number transfers the call to that person. (*Id.* at 3.) According to the DAJD, the only way that jail facilities can enforce a court order to keep an inmate from calling anyone other than his lawyer is to assign the inmate to Ad-Seg housing.[3]

On June 1, 2007 (i.e., ten days before Mr. Penwell pleaded guilty in the Second Criminal Matter), King County Superior Court Judge Laura C. Inveen granted Mr. Penwell's motion to modify the original phone-block order, thereby permitting Mr. Penwell to contact his attorneys, his mother, and any other person permissible by jail regulations and the law. (Dkt.

---

2 Mr. Penwell was also prohibited from sending outgoing letters and from receiving visits from his mother.

3 As defendants note and is undisputed by Mr. Penwell, a trial court may order a highly restrictive phone block such as this one after having been presented with evidence that the blocking of specific phone numbers has not prevented an inmate from reaching a witness, victim, or other person he has been ordered not to call. (Dkt. 130, at 3.)

133, at 2.) On June 4, 2007, DAJD Classification staff informed Mr. Penwell that he would be immediately removed from Ad Seg and returned to the general population. (Dkt. 130, at 4.) However, Mr. Penwell expressed concerns about his safety within the general prison population due to the child-molestation charges and asked that he be allowed to remain in Ad Seg. (*Id.*) Jail staff informed Mr. Penwell that he would be returned to the general population whenever he chose to be returned. (*Id.*) On July 3, 2007, Mr. Penwell was transferred out of the King County system to the Washington Department of Corrections. (Dkt. 133, at 3.)

Mr. Penwell filed his current § 1983 action in December 2005. (Dkt. 1.) The Court granted summary judgment in favor of defendants on all grounds in July 2007 (Dkts. 97, 101–02), and Mr. Penwell appealed (Dkt. 103). The Ninth Circuit affirmed on all issues except for one. *See Penwell v. Holtgeertz*, No. 07-35638 (9th Cir. July 7, 2010), *located at* (Dkt. 114). During the pendency of Mr. Penwell's appeal, the Ninth Circuit clarified that the "sincerity test," not the "centrality test," applied to a prisoner's free-exercise claim. *Id.* at 3 (citing *Shakur v. Schriro*, 514 F.3d 878, 884–85 (9th Cir. 2008)). Because the district court had employed the centrality test, the Ninth Circuit vacated summary judgment on Mr. Penwell's free-exercise claim and remanded for reconsideration under the sincerity test. *Id.* at 4. The Ninth Circuit noted that "[e]ven if the district court concludes that the restrictions burdened Penwell's free exercise rights, the restrictions may nonetheless be valid if they are 'reasonably related to legitimate penological interests.'" *Id.* at 4 n.2 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

On remand, this Court denied plaintiff's IFP application and motion for appointed counsel, and requested supplemental briefing on Mr. Penwell's free-exercise claim. (Dkts.

121, 124.)

## DISCUSSION

The Ninth Circuit remanded this matter so that the Court could apply the sincerity test to determine whether Mr. Penwell's claim implicated the Free Exercise Clause and, if so, whether the restrictions on his free exercise where nonetheless valid under *Turner*. Defendants renew their motion for summary judgment on this remaining issue.[4] (Dkts. 81, 129.)

The Court finds that Mr. Penwell's free-exercise rights were implicated by the conditions of Ad-Seg housing that curtailed his ability to attend group prayer services and consult privately with a chaplain, and that the record is insufficiently developed with respect to whether these restrictions were nonetheless valid as reasonably related to legitimate penological interests. Furthermore, in accordance with Ninth Circuit authority the Court finds that Mr. Penwell placed defendants on notice of a RLUIPA claim in 2007 and in the recent supplemental briefing, and that the record is insufficiently developed as to whether the substantial burden on Mr. Penwell's religious practices constituted the least restrictive means of furthering the government's compelling interests.[5] So the parties may further develop the record and bring renewed dispositive motions, the Court recommends denying defendants' motion for summary judgment, construing plaintiff's opposition briefs to be motions to amend

---

[4] Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The evidence is viewed and reasonable inferences are drawn in the light most favorable to the nonmoving party. *United States v. Johnson Controls, Inc.,* 457 F.3d 1009, 1013 (9th Cir. 2006). The nonmovant must do more than simply deny the veracity of everything offered or show a mere "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986); *see* Fed. R. Civ. P. 56(c). The mere existence of a scintilla of evidence is likewise insufficient to create a genuine factual dispute. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986).

[5] The Court declines to address Mr. Penwell's claimed violation of the Establishment Clause (Dkt. 127, at 5) because the claim is not explained in his briefing and is not suggested by the record.

to add a RLUIPA claim and granting those motions, and granting plaintiff leave to file (a) an updated IFP application and (b) a motion for appointment of counsel.

**I.      Free Exercise Clause: The Sincerity Test**

In *Shakur v. Schriro*, 514 F.3d 878, 885 (9th Cir. 2008), the Ninth Circuit clarified that the sincerity test determines whether the Free Exercise Clause applies to a prisoner's claim. Thus, to implicate the Free Exercise Clause, a belief must be both "sincerely held" and "rooted in religious belief." *Id.* at 884 (quoting *Malik v. Brown*, 16 F.3d 330, 333 (9th Cir. 1994)) (internal quotation marks removed).   Mr. Penwell asserts that his free exercise of Catholicism was burdened by the conditions of Ad-Seg housing because he was not permitted to attend group prayer meetings and because he was not able to converse privately with a chaplain but instead had to communicate through the cell door.

The Court finds that the Free Exercise Clause is implicated by Mr. Penwell's allegations. First, nothing in the record refutes the sincerity of Mr. Penwell's Catholic faith. Second, Mr. Penwell's claim is rooted in aspects of common practices for Catholics: group prayer and private consultation with religious officiants. Given his sincere belief that his religious practice was burdened by restrictive conditions in Ad Seg, Mr. Penwell has stated a valid free-exercise claim.

**II.     Free Exercise Clause: Balancing the *Turner* Factors**

"When a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). *Turner* sets forth four factors to be balanced in determining whether a prison restriction is reasonably related to legitimate penological interests:

> (1) Whether there is a "'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it";
> (2) Whether there are "alternative means of exercising the right that remain open to prison inmates'";
> (3) Whether "accommodation of the asserted constitutional right" will "impact . . . guards and other inmates, and on the allocation of prison resources generally"; and
> (4) Whether there is an "absence of ready alternatives" versus the "existence of obvious, easy alternatives."

*Turner*, 482 U.S. at 89–90 (quoting *Block v. Rutherford*, 468 U.S. 576, 586 (1984)). While the first two *Turner* factors favor defendants, the record is insufficiently developed to evaluate the third and fourth *Turner* factors.

The first *Turner* factor requires the Court to evaluate whether there was a legitimate penological interest that is rationally related to the restrictions. *Turner*, 482 U.S. at 89. Defendants assert that their phone system cannot technologically enforce a phone block as restrictive as the one imposed by Mr. Penwell's court order. Mr. Penwell had to be placed in Ad Seg so that they could physically monitor him to ensure that he called no one other than his attorney. Mr. Penwell does not contradict this factual assertion. The Court finds that the first *Turner* factor weighs heavily in favor of defendants.

Under the second *Turner* factor, the Court considers whether Mr. Penwell has "alternative means by which he can practice his religion" or is "denied all means of religious expression." *Ward v. Walsh*, 1 F.3d 873, 876–77 (9th Cir. 1993). It is undisputed that Mr. Penwell had other means of practicing his religion. For example, as stated by Chaplain Shannon O'Donnell, all inmates, whether in the general population or in segregation, are able to receive reading materials through a chaplain or the mail, may meet one-on-one with pastoral staff, may take time for spiritual though solitary communion with God, may refrain from eating

meat on Fridays, and may give up a food item or other personal practice during Lent. (Dkt. 132, at 2–3.) The jail facilities have various chaplains, including Catholic priests, pastoral ministers, and laypeople, who come in and meet with inmates at the inmates' request. (*Id.* at 2.) The second *Turner* factor also weighs in defendants' favor.

Under the third prong of the *Turner* test, the Court considers the "impact [the] accommodation . . . will have on guards and other inmates, and on the allocation of prison resources generally." *Ward*, 1 F.3d at 878 (citing *Washington v. Harper*, 494 U.S. 210, 225 (1990)). Defendants contend that permitting Mr. Penwell group worship and private conversations with a chaplain would have required guarding dedicated just to him, which would have led to reassignment of duties, payment of overtime, and severe financial hardship. (Dkt. 129, at 12; Dkt. 130, at 3.) Defendants do not, however, support these assertions with financial data, describe how Ad Seg housing is actually staffed, or explain why such an accommodation could not be met using existing staffing.[6] Mr. Penwell asserts, for example, that existing, "floater" guards could have escorted him, that none of the rooms used for church services or for private audiences contains a telephone, and that no officers attend group church services. (Dkt. 134, at 8.) Defendants also assert that allowing Mr. Penwell privileges not afforded other Ad-Seg inmates would have been seen by other inmates as preferential treatment and therefore would have constituted a security risk. The Court discounts the favoritism argument, since this effect "is present in every case that requires special accommodations for adherents to particular religious practices." *Ward*, 1 F.3d at 878. The record is insufficiently developed to

---

6 Defendants submitted a declaration from a financial manager that states that the DAJD faced budget cuts from 2009 to 2011. (Dkt. 131.) The Court finds this declaration to be irrelevant to answering whether accommodating Mr. Penwell's requests from 2004 to 2007 would have affected the allocation of prison resources.

REPORT AND RECOMMENDATION
PAGE -8

evaluate the third *Turner* factor.

Finally, the fourth *Turner* factor requires the Court to consider whether "there are ready alternatives to the prison's current policy that would accommodate [Mr. Penwell] at de minimis cost to the prison." *Ward*, 1 F.3d at 879. The "existence of obvious, easy alternatives may be evidence that the regulation is not reasonable, but is an 'exaggerated response' to prison concerns." *Turner*, 482 U.S. at 90. Defendants imply that it would be costly and impractical to accommodate *any* Ad-Seg inmate's request to attend group prayer services or to consult privately with a chaplain but decline to support this position with any financial information or specifics. Mr. Penwell responds that because there are no telephones available in the rooms dedicated to group services and private meetings, there was no risk of his violating the court's phone-block order, and there was only a *de minimis* cost of being escorted from one secure location to another. Neither party addresses whether Mr. Penwell posed a greater security risk that would require additional staffing, as might be suggested by his request to remain in Ad-Seg housing after the lift of the phone block; or little security risk that would require little additional attention, as might be suggested by defendants' willingness to return him to the general population immediately after the lifting of the phone block. The record is insufficiently developed to evaluate the fourth *Turner* factor.

Because the *Turner* factors cannot be properly evaluated on the present record, the Court recommends denying defendants' motion for summary judgment on the free-exercise claim with leave to renew defendants' summary-judgment motion upon the presentation of additional information.

/ / /

REPORT AND RECOMMENDATION
PAGE -9

### III. Amending the Complaint to Add a RLUIPA Claim

Plaintiff raised a RLUIPA claim for the first time in 2007, when he filed his original opposition brief to defendants' motion for summary judgment. (Dkt. 96, at 13.) Neither this Court nor the Ninth Circuit addressed the RLUIPA claim. (Dkts. 97, 101, 114.) Mr. Penwell renewed his RLUIPA claim in his recent supplemental brief. (Dkt. 127, at 3–5.) The Court recommends construing his 2007 and 2011 opposition briefs (Dkts. 96, 127) to be motions to amend his complaint to add a RLUIPA claim and granting those motions. *See* Fed. R. Civ. P. 15(a) (providing that a court should "freely give leave" to amend a complaint "when justice so requires"); *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001) (noting that the policy of granting leave to amend "is to be applied with extreme liberality") (internal citation omitted). The Court also recommends affording the parties an opportunity to develop the record with respect to the RLUIPA claim.

#### A. Notice of RLUIPA Claim

Neither plaintiff's Amended Complaint nor his denied motion to amend that complaint to add new defendants contains a RLUIPA claim. (Dkts. 26, 65.) Nonetheless, Mr. Penwell raised a RLUIPA claim in his 2007 opposition to summary judgment (Dkt. 96, at 13), and asserted a RLUPA claim in his recent supplemental brief (Dkt. 127, at 3–5). Under analogous circumstances, the Ninth Circuit remanded so that a district order could consider a *pro se* prisoner's RLUIPA claim in the first instance.

In *Alvarez v. Hill*, 518 F.3d 1152, 1157 (9th Cir. 2008), the Ninth Circuit held that a prisoner's "RLUIPA claim was presented to the district court because his complaint and subsequent filings provided [defendants] with 'fair notice' of that claim, even though the statute

was not cited in the complaint itself." That is, "a complaint's failure to cite RLUIPA does not preclude a plaintiff from subsequently asserting a claim based on that statute. . . . [I]t is sufficient that the complaint, alone or supplemented by any subsequent filings before summary judgment, provide the defendant fair notice that the plaintiff is claiming relief under RLUIPA as well as the First Amendment." *Id.* at 1159.

Although Mr. Penwell first raised his RLUIPA claim *during* summary judgment proceedings in 2007—and the Court, the Ninth Circuit, and defendants could reasonably decline consideration of the RLUIPA claim for that reason alone—it would not serve the interests of justice to decline addressing the RLUIPA claim four years later given the continued vitality of plaintiff's more difficult-to-establish First Amendment claim. Defendants were first put on notice of a RLUIPA claim in 2007; Mr. Penwell renewed his RLUIPA claim in 2011; and defendants have argued against Mr. Penwell's First Amendment claim by exploring, at-length, RLUIPA's statutory term-of-art "substantial burden." (Dkt. 129, at 6–8).[7]

The Court recommends construing Mr. Penwell's opposition briefs to be motions to amend the complaint to add a RLUIPA claim, and granting Mr. Penwell's motions to amend the complaint.

### B. Questions Raised by the RLUIPA Claim

Defendants have not yet had the opportunity to develop the record and to respond to Mr. Penwell's claim under RLUIPA, a statutory scheme that is "the latest of long-running

---

7 Defendants quote and discuss the definition of "substantial burden" in *Navajo Nation v. U.S. Forest Service*, 535 F.3d 1058 (9th Cir. 2008) , arguing that Mr. Penwell has failed to show such a substantial burden. (Dkt. 129, at 6–8.) *Navajo Nation* is not a First Amendment case. It is a case under RLUIPA's predecessor statute, the Religious Freedom Restoration Act ("RFRA"), which contains the same "substantial burden" language as the RLUIPA.

congressional efforts to accord religious exercise heightened protection from government-imposed burdens . . . ." *Cutter v. Wilkinson*, 544 U.S. 709, 714 (2005). The Ninth Circuit has noted that Congress has effectuated its intent to broadly protect religious exercise by distinguishing RLUIPA from traditional First Amendment jurisprudence in at least two ways:

> First, it expanded the reach of the protection to include any "religious exercise," including "any exercise of religion, whether or not compelled by or central to, a system of religious belief." In fact, RLUIPA "bars inquiry into whether a particular belief or practice is 'central' to a prisoner's religion." Second, as opposed to the deferential rational basis standard of *Turner v. Safley*, RLUIPA requires the government to meet the much stricter burden of showing that the burden it imposes on religious exercise is "in furtherance of a compelling governmental interest; and is the least restrictive means of furthering that compelling governmental interest."

*Greene v. Solano County Jail*, 513 F.3d 982, 986 (2008) (citations omitted); *see also Warsoldier v. Woodford*, 418 F.3d 989, 994 (9th Cir. 2005). The RLUIPA provides, in relevant part, that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability," unless the government establishes that the burden furthers "a compelling governmental interest," and does so by "the least restrictive means." 42 U.S.C. § 2000cc-1(a)(1)–(2).

The undisputed record shows that Mr. Penwell's factual allegations meet the threshold of showing that his religious exercise—i.e., ability to join in group prayer and to consult privately with a chaplain—has been substantially burdened by defendants' general rule prohibiting Ad-Seg inmates from participating in such activities. In *Greene v. Solano County*, the Ninth Circuit rejected the prison's attempt to define "religious exercise" more broadly to

REPORT AND RECOMMENDATION
PAGE -12

mean "practice of one's religion, rather than any particular practice within one's religion." *Greene*, 513 F.3d at 987. The *Greene* court therefore accepted that the "religious exercise" at issue was group worship, not Christianity in general. *Id.* at 988. The Ninth Circuit then held that it had "little difficulty" in concluding that the jail's policy of prohibiting a maximum security prisoner from attending group worship services substantially burdened his ability to exercise his religion. *Id.* Similarly, here Mr. Penwell asserts that an outright ban on his religious practices of group worship and private consultation have been substantially burdened by the jail's policy of disallowing such religious activities for all Ad-Seg inmates.

Because of the lawsuit's procedural posture, the record is inadequately developed as to the next step of an inquiry into an alleged RLUIPA violation: whether defendants can establish that the substantial burden furthers "a compelling governmental interest," and does so by "the least restrictive means." 42 U.S.C. § 2000cc-1(a); 42 U.S.C. § 2000cc-2(b); *Greene*, 513 F.3d at 988. The Court recommends that defendants be afforded the opportunity to develop the record further and to renew their motion for summary judgment.

## IV.  IFP Application and Motion to Appoint Counsel

The Court earlier denied Mr. Penwell's IFP application because his prison account showed an average spendable balance of $1,719, he referred to an unspecified amount of income from a legal settlement, and he stated that he was hiring private counsel for a pending habeas corpus petition. (Dkt. 124; *see* Dkts. 121–23.) The Court also denied Mr. Penwell's motion to appoint counsel because the record suggested neither complexity nor a likelihood of success on the merits. (Dkt. 124, at 2; *see* Dkt. 121, at 1–2.) The parties' briefs demonstrate that the Court has good cause for revisiting these conclusions.

The Court has discretion to appoint counsel for indigent civil litigants pursuant to 28 U.S.C. § 1915(e)(1), but an appointment of counsel should only be granted under "exceptional circumstances." *Agyeman v. Corrections Corp. of Am.*, 390 F.3d 1101, 1103 (9th Cir. 2004). "When determining whether "exceptional circumstances" exist, the Court considers "the likelihood of success on the merits as well as the ability of the petitioner to articulate his claims pro se in light of the complexity of the legal issues involved." *Weygandt v. Look*, 718 F.2d 952, 954 (9th Cir. 1983). The present record suggests that exceptional circumstances may exist: there is a genuine issue of material fact about the First Amendment claim; there is no indication, as yet, that the jail investigated whether an outright ban on group worship and private religious consultations for Ad-Seg inmates constituted the "least restrictive means" for effectuating a compelling governmental interest; and further discovery may be necessary before the submission of dispositive motions.

The Court recommends granting plaintiff leave to file within thirty days of the order adopting this Report and Recommendation (a) an updated application to proceed *in forma pauperis* and (b) a renewed motion for appointment of counsel.

**CONCLUSION**

The Court recommends as follows: (1) DENYING defendants' motion for summary judgment (Dkts. 81, 129); (2) CONSTRUING plaintiff's opposition briefs in 2007 (Dkt. 96) and 2011 (Dkt. 127) to be motions to amend the complaint to add a RLUIPA claim and GRANTING the motions to amend; and (3) GRANTING plaintiff leave to file (a) an updated application to proceed *in forma pauperis* and (b) a renewed motion for appointment of counsel. Plaintiff should file his updated application to proceed *in forma pauperis* and renewed motion

for appointment of counsel **within thirty (30) days** of the date of the order adopting this Report and Recommendation. A proposed order is attached.

DATED this 15th day of July, 2011.

/s/ Mary Alice Theiler
Mary Alice Theiler
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE -15